*FOR PUBLICATION*

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX
APPELLATE DIVISION

| | |
|---|---|
| BRIAN PETER ELMOUR, ) <br> ) <br> Appellant, ) <br> ) <br> v. ) <br> ) <br> GOVERNMENT OF THE VIRGIN ISLANDS, ) <br> ) <br> Appellee. ) <br> ) | D.C. CRIM. APP. NO. 2007/020 <br><br> Re: Sup.Ct.Crim. 178/2001 |

On Appeal from the Superior Court of the Virgin Islands

Considered: DECEMBER 19, 2008
Filed: October 22, 2010

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge, U.S. District Court of the Virgin Islands; **RAYMOND L. FINCH**, Judge of the U.S. District Court of the Virgin Islands; and **BRENDA J. HOLLAR**, Judge of the Superior Court of the Virgin Islands, sitting by designation.

ATTORNEYS:

**Eszart A. Wynter, Esq.**
St. Croix, U.S.V.I.
    Attorney for Appellant,

**Terrlyn M. Smock, AAG**
St. Thomas, U.S.V.I.
    Attorney for Appellee.

| Memorandum Opinion | |
|---|---|

In this appeal, the Court is asked to determine whether a coram nobis petitioner is entitled to an evidentiary proceeding to determine the effectiveness of counsel who fails to advise his client of the deportation consequences of entering a guilty plea. In line with the Supreme Court's recent holding in *Padilla v. Kentucky*, we remand for further evidentiary proceedings. 130 S. Ct. 1473, 1478 (2010). We, however, do not address the merits of the instant coram nobis petition. *Id.*

## I. FACTUAL AND PROCEDURAL HISTORY

At the time of his sentencing, Brian Peter Elmour ("Elmour"), a native of England, was a 40 year old lawful permanent resident who lived in the United States for over thirty-seven years.[1] Elmour was charged in a two-count criminal information with third degree assault and carrying or using a dangerous weapon for allegedly striking his roommate with a saltshaker and stabbing him in the abdomen.[2]

---

[1] Elmour was born in Yorkshire, England on September 29, 1962. On January 5, 1964, at the age of two, Elmour migrated to the United States.

[2] Elmour was charged in a two count amended criminal information with assault in the third degree, in violation of V.I. Code Ann. tit. 14, § 297(2) and carrying or using a

On September 14, 2001, while represented by counsel, Elmour entered a plea of guilty on the assault charge. In return for his guilty plea, the Government dismissed the weapon charge. On October 21, 2001, the trial court sentenced Elmour to a three-year period of incarceration, all of which was suspended and a five-year period of supervised probation.[3] Elmour claims that, prior to his plea, his counsel advised him that he would not be deported if he pled guilty. (Appellant's Brief at 8.)

However, in November of 2002, Elmour was taken into custody by the Immigration and Naturalization Service and subjected to deportation proceedings.[4] Upon the initiation of removal proceedings, Elmour realized that his counsel had given him erroneous advice regarding the immigration consequences of his plea conviction. He subsequently filed a motion to modify his sentence to a period of incarceration of 364 days. Elmour argued that such a sentence would not subject him to deportation. Elmour's motion was denied.

---

dangerous weapon, in violation of V.I. Code Ann. tit. 14, § 2251(a)(2).

[3] The Superior Court discharged Elmour from probation on December 23, 2004. (J.A. 49.)

[4] Elmour remains in I.N.S. custody in the Metropolitan Detention Center in Guayabano, Puerto Rico, by virtue of a commitment issued by the Department of Homeland Security. He has been in removal proceedings before the United States Citizenship and Immigration Services ("USCIS") for the past several years.

Subsequently, Elmour filed a motion to withdraw his plea.[5] In this motion, Elmour alleged that both his Fifth Amendment right to Due Process and his Sixth Amendment right to Effective Assistance of Counsel were violated when his defense counsel affirmatively misinformed him that his plea would not render him deportable.

On August 8, 2003, the trial court denied Elmour's motion to withdraw his plea. The trial court reasoned that deportation was a collateral civil consequence of a criminal proceeding and that the Sixth Amendment right to effective assistance of counsel does not extend to collateral aspects of prosecution. (J.A. 67-69.) In a direct appeal distinct and separate from the matter before us, Elmour challenged the Superior Court's August 2003 ruling. In that appeal, Elmour invoked *Strickland v. Washington*[6] and argued that he was entitled to relief under an ineffective

---

[5] SUPER. CT. R. 126 provides that a defendant may withdraw a guilty plea only by permission of the court. *Id.* Contrary to its federal counterpart, that local rule does not set the time within which a guilty plea may be changed, nor does it make a distinction between changes sought before or after sentencing. *See* SUPER. CT. R. 126; *compare with* Fed.R.Crim.P. 11(e) (prohibiting post-sentencing withdrawals of guilty pleas by the trial court, and permitting consideration of post-sentence challenges to guilty pleas only on collateral attack or direct appeal).

[6] 466 U.S. 668 (1984).

assistance of counsel theory. Elmour argued that both the court and counsel was required to inform him that his deportation may occur as a result of his plea

On June 24, 2005, this Court affirmed the trial court's August 8, 2003, ruling and also held that neither Elmour's counsel nor the lower court had a duty to inform Elmour about the collateral deportation consequences of his plea. However, we declined to review Elmour's collateral ineffective assistance of counsel claim on direct appeal because the facts surrounding defense counsel's representation were insufficiently developed on the record submitted. (App. 71- 84.) We did not remand for an evidentiary hearing and left Elmour to elect to pursue his collateral challenge in the Superior Court. (*Id.* at 84.)

On August 31, 2005, Elmour renewed his ineffective assistance of counsel challenge in a separate petition for a writ of coram nobis in the Superior Court. On June 6, 2006, without the benefit of an evidentiary hearing, the Superior Court summarily denied Elmour's petition in a two-page order. On June 14, 2006, this timely appeal followed.

II. JURISDICTION

This Court has jurisdiction over appeals of final judgments or orders that were entered before January 29, 2007. *See* Revised

Organic Act of 1954 23A, 48 U.S.C. § 1613(a)[7]; Act No. 6687 § 4 (October 29, 2004); V.I. CODE ANN. tit. 4, § 33 (2006); *see also Gabriel Joseph v. People of the V.I.*, 2008 U.S. Dist. LEXIS 107654, at *17 (D.V.I. App. Div. Dec. 9, 2008).

### A. Guilty Plea

This Court has jurisdiction to review a conviction entered upon a guilty plea, only to the extent such appeal raises a colorable constitutional claim. *Karpouzis v. Virgin Islands*, 58 F. Supp. 2d 635, 637 (D.V.I. 1999); *see also Henry v. Gov't. of the Virgin Islands*, 340 F. Supp. 583, 585-86 (D.V.I. App. Div. 2004)(notwithstanding statutory limitation on appeals from guilty pleas, the court must nonetheless review appeals from guilty pleas where constitutional claims are raised)(citing *Gov't of the Virgin Islands v. Warner*, 48 F.3d 688, 691-92 (3d Cir. 1995). A colorable constitutional claim is implicated where the issue on appeal concerns Appellant's Sixth Amendment right to effective assistance of counsel. *United States v. Rad-O-Lite of Phila., Inc.*, 612 F.2d 740, 744 (3d Cir. 1979); *Evola v. AG of the United States*, 190 Fed. Appx. 171, 174 (3d Cir. 2006).

---

[7] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp.2003), *reprinted in* V.I.Code Ann. tit. 1, §§ 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2003) (preceding V.I.Code Ann. tit. 1).

B. Writ of Coram Nobis

Relief by writ of coram nobis may be pursued in the Courts of the United States pursuant to the all Writs Act, 28 USC § 1651, *United States v. Morgan*, 346 U.S. 502 (1954)(citations omitted), and in the Superior Court of the Virgin Islands pursuant to 4 V.I. Code Ann. tit. 4, § 83.[8]

III. Standard of Review

We exercise plenary review over whether the trial court applied the proper legal standard, but we review the trial court's ultimate decision to deny the writ without an evidentiary hearing for abuse of discretion. *See Blanton v. United States*, 94 F.3d 227, 230 (6th Cir. 1996); *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998); *Alikhani*, 200 F.3d at 734 (citing *Fleming v. United States*, 146 F.3d 88. 90 (2d. Cir. 1998)(coram nobis review holding that, "an error of law is an abuse of discretion per se").

---

[8]
> The practice and procedure in the Superior Court shall be as prescribed by rules adopted by the district court. Subject to the approval of the district court, the Superior Court may from time to time prescribe rules for the conduct of its business consistent with law and with the rules prescribed by the district court and *may issue all writs* and make all orders necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law.

V.I. Code Ann. tit. 4, § 83(emphasis added).

### A. Guilty Plea

To satisfy constitutional due process, a guilty plea must both be knowing and voluntary. When a guilty plea is entered in a state criminal trial, several federal constitutional rights are waived, including the privilege against compulsory self-incrimination, the right to jury trial, and the right to confront one's accusers. *See* Fed. R. Crim. P. 11; *see also* Super. Ct. R. 126; *see also Boykin v. Alabama*, 395 U.S. 238, 242-244 (1969). Hence, before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *Strickland v. Washington*, 466 U.S. 668 1984[9]; *see, e.g., Smith v. Freeman*, 892 F.2d 331, 338 (3d Cir. 1989)(the entry of a guilty plea necessarily involves an intentional, voluntary and knowledgeable abandonment of certain rights); *see also Smith v. O'Grady*, 312 U.S. 329, 334 (1941) (noting that a plea may be involuntary where the accused does not understand the nature of the constitutional protections he is waiving, or where he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.)

---

[9] To sustain a claim for ineffective assistance of counsel, Elmour must satisfy two prongs: (1) that counsel's representation fell below an objective standard of reasonableness and (2) prejudice to the defense, that is, that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 700; *Babalola*, 248 Fed. Appx. at 413.

### B. Writ of Coram Nobis[10]

Viewed as essentially a remedy of last resort, the writ of coram nobis is an extraordinary remedy available in compelling circumstances where necessary to achieve justice.[11] *Morgan*, 346 U.S. at 511; *Fleming*, 146 F.3d at 89; *United States v. Cariola*, 323 F.2d 180, 184 (3d Cir. 1963). Coram nobis redress can be had where there are errors of "'the most fundamental kind', that is, such as to render the proceeding itself irregular and invalid."[12]

---

[10] Unlike a motion for writ of habeas corpus, a motion for writ of coram nobis is a procedural step in a criminal case as opposed to relief that is sought in a separate civil proceeding. *United States v. Morgan*, 346 U.S. 502, 506 (1954)(citations omitted). While at common law the writ of coram nobis was issued out of chancery like other writs, Stephens, Principles of Pleading (3d Amer. ed.), 142, the procedure by motion in the case is now the accepted American practice. *Morgan*, 346 U.S. at 506. However, A coram nobis motion is otherwise of the same general collateral character as one for habeas corpus under 28 U.S.C. § 2255. *Id*.

[11] The writ of coram nobis is specifically used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer 'in custody'. *United States v. Baird*, 2008 U.S. App. LEXIS 19328, at * 2 (3d Cir. Pa. Sept. 9, 2008); *Evola*, 190 Fed. Appx. at 173-174. A motion for such relief challenges the validity of a conviction even though the sentence has been fully served. *Stoneman*, 870 F.2d at 105. A coram nobis request has no limitations period and may be raised at any time after sentence has been satisfied. *United States v. Morgan*, 346 U.S. at 505-506.

[12] Such error warrants coram nobis relief where it involves a matter of fact "of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *Moody v. United States*, 874 F.2d 1575, 1576-1577 (11th Cir. 1989)(citing *Mayer*, 235 U.S. at 69));

*Cariola*, 323 F.2d at 184 (quoting *Mayer*, 235 U.S. at 69(citations omitted)). As such, the bar for coram nobis is high.

The writ of coram nobis is also a rarely invoked remedy.[13] Hence, case law in this jurisdiction is sparse concerning whether a trial court is required to hold an evidentiary hearing prior to disposing of a petition for writ of coram nobis. Our understanding is, thus, gleaned from the Circuits, which have consistently concluded that the necessity of a hearing on a coram nobis motion should be resolved in the same manner as under federal habeas corpus petitions pursuant to 28 U.S.C. § 2255.[14] *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. Cal. 1981)(quoting *Owensby v. United States*, 353 F.2d 412, 417 (10th

---

see also *Morgan*, 346 U.S. at 512.

[13] The writ of coram nobis has been repeatedly referred to as an "extraordinary remedy," "a remedy infrequently used," and "a remedy reserved for exceptional circumstances." See, e.g., *Morgan*, 346 U.S. at 511; *United States v. Baptiste*, 223 F.3d 188, 189 (3d Cir. 2000); *Evola*, 190 Fed. Appx. at 174.

[14] 28 U.S.C. § 2255 (2001) provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

*Id.*

Cir. 1965)); *see also Pitts v. United States*, 763 F.2d 197, 198 (6th Cir. 1985) (noting that the standards for granting relief under § 2255 and coram nobis are substantially the same).[15] Accordingly, we will treat the present challenge to Elmour's coram nobis proceeding in the same manner as a habeas petition. *See, e.g., United States v. Vogel*, 2006 U.S. Dist. LEXIS 27945 (D.S.C. Apr. 20, 2006).

## IV. ANALYSIS

Elmour contends that the trial court's denial of his collateral petition for a writ without an evidentiary hearing was procedurally deficient. Where a trial court denies a collateral petition without holding an evidentiary hearing, our review consists of a two-step analysis.[16] *Palmer v. Hendricks*, 592 F.3d

---

[15] Similarly, the Court of Appeals for the Eleventh and Second Circuits have stated that like habeas petitions, if the petitioner seeking a writ of coram nobis "alleges facts that, if true, would entitle him to relief, then the [trial] court should order an evidentiary hearing and rule on the merits of his claim." *See Aron v. United States*, 291 F.3d 708, 714-715 n.5 (11th Cir. 2002); *see also United States v. Smith*, 257 F.2d 432, 434 (2nd Cir. 1958). However, if the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a trial court is not required to hold an evidentiary hearing. *Id.*; *Blanton*, 94 F.3d at 235 (in coram nobis and § 2255 proceedings, evidentiary hearings are not required when, where the record conclusively shows that the petitioner is entitled to no relief).

[16] *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (because of the similarities between coram nobis proceedings and § 2255 habeas proceedings, the § 2255 procedure often is applied by analogy in coram nobis cases).

386, 393 (3d Cir. 2010)(habeas proceeding); *Fontaine v. United States*, 411 U.S. 213, 215 (1973)(citations omitted)(habeas proceeding premised on guilty plea challenge). First, we must determine whether the petitioner has alleged facts that, if proved, would entitle him to relief.[17] *Blanton*, 94 F.3d at 235 (coram nobis context); *Fontaine*, 411 U.S. at 215; *Smith v. Freeman*, 892 F.2d 331, 338 (3d Cir. 1989) (habeas context). Only then, must we decide whether an evidentiary hearing is necessary to establish the truth of those allegations. *Blanton*, 94 F.3d at 235 (coram nobis context).

A. **Entitlement to relief**

Elmour filed his original brief on May 15, 2008. After Elmour filed his original brief, and while this matter was pending, the Supreme Court issued *Padilla v. Kentucky*, 130 S.Ct. 1473. Jose Padilla was a non-citizen who pled guilty to drug distribution charges in Kentucky. *Id.* at 1478. In post-

---

[17] *See Fontaine*, 411 U.S. at 215; *see also United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981) (where motions, files, and records of the case conclusively show that defendant is entitled to no relief, no hearing is required on petition for writ of coram nobis); *Adam v. United States*, 274 F.2d 880, 883 (10th Cir. 1960)(admissions inherent in a guilty plea obviate the necessity of any hearing on the points raised by the writ of coram nobis); *United States ex rel. Delman v. Butler*, 390 F. Supp. 606, 610 (E.D.N.Y. 1975)(no coram nobis hearing is required "when the record conclusively demonstrates the falsity of the allegations and there is no reasonable probability at all that defendant's averments are true").

conviction proceedings Padilla, like Elmour, claimed *inter alia* that his counsel affirmatively misinformed him that his plea would not render him deportable. *Padilla*, 130 S.Ct. at 1478. Padilla claimed that had he known that his plea would have rendered him deportable, he would not have pled guilty and instead, would have gone to trial. *Id.* The Supreme Court of Kentucky denied Padilla post-conviction relief without an evidentiary hearing. *Id.* Padilla appealed.

The Supreme Court granted certiorari and held that constitutionally competent counsel would have advised Padilla that his conviction would have subjected him to deportation. *Id.* The high Court's landmark decision was a sharp departure from decades of jurisprudence which held that, "failure of defense counsel to advise a [criminal] defendant of possible deportation consequences was not a cognizeable claim fo ineffective assistance of counsel." *Padilla*, 130 S. Ct. at 1481. Citing a drastic shift in the landscape of federal immigration standards, the high court held that "changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction" and that those changes affirm that critical importance of accurate legal advice concerning the consequence of a guilty plea for the noncitizen accused -- for whom deportation may serve as a more stark penalty than imprisonment. *Id.* at

1478, 1480. The Court reasoned that its responsibilities under the constitution compelled it to safeguard Padilla against the "mercies of incompetent counsel." *Id.* at 1486-1487. In order to avoid constitutionally deficient representation, a criminal defendant's attorney must inform her client when a risk of deportation would accompany a criminal conviction. *Id.* at 1482. The high Court concluded that Padilla indeed had satisfied *Strickland*'s first prong of showing constitutionally deficient representation. *Id.* at 1486-1487. However, the Court declined deciding *Strickland*'s second prong question of prejudice, and remanded the matter for further proceedings. *Id.*

As the Government properly points out, in a coram nobis context, a petitioner must show that "there was no remedy available at the time of trial."[18] Appellee's Brief at 6 (citing

---

[18] Although we decline to address the merits, evaluating the coram nobis standard is informative to determining whether Elmour has made a prima facie showing, under coram nobis, that he is "entitled to relief". *Blanton*, 94 F.3d at 235. A coram nobis petitioner must show that: (1) he is suffering from continuing consequences of the allegedly invalid conviction, *United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989)(citations omitted) (citing *Morgan*, 346 U.S. at 512-13); (2) there was no remedy available at the time of trial, *id.*; *Osser*, 864 F.2d at 1062; and( 3) sound reasons exist for failing to seek relief earlier. *Id.* Moreover, a trial court may issue a writ of error coram nobis only if "the error involves a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *United States v. Jerdine*, 2010 U.S. App. LEXIS 10534, 1-2 (11th Cir. Fla. May 24, 2010) (citing *Alikhani*, 200 F.3d at 734. Elmour who is facing deportation as a result of his guilty

*Bernadi v. U.S.*, 171 Fed. Appx. 387 (3d Cir. 2006)). Indeed, prior to the Supreme Court's decision in *Padilla*, Elmour had no remedy to challenge his plea under then-existing common law. *See, e.g., Babalola*, 248 Fed. Appx. 409, 414 (denying coram nobis petitioner's writ where petitioner claimed that her counsel failed to warn her of deportation's consequences). However, under *Padilla*'s recent holding, if and only if Elmour's allegations are sufficiently proven, he may now have established a violation of his constitutional right and, thus, may be entitled to some form of relief.[19] *Padilla*, 130 S. Ct. at 1486-1487.[20]

---

plea has clearly surmounted Morgan's first hurdle because his deportation was a direct consequence of the plea conviction he argues was invalid. Elmour initially appealed in 2003, shortly after his conviction. We declined to address his ineffective assistance of counsel claim on direct review in an opinion issued on June 21, 2005. He pursued his collateral coram nobis challenge in the Superior Court on August 31, 2005. The Superior Court passed upon the factual basis of Elmour's claim and summarily denied his petition. As such, he has also made a prima facie showing of *Morgan*'s second and third requirements.

[19] "Our law has enmeshed criminal convictions and the penalty of deportation for nearly a century," and "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders" who are, under appropriate circumstances, entitled to be advised of the effects of civil deportation prior to entering a guilty plea in criminal matters. *Id.*

[20] Direct consequences may be described as those within the sentencing authority of the trial court, as opposed to the many other consequences to a defendant that may result from a criminal

### B. Necessity of Evidentiary Hearing

We now turn to determine whether Elmour is entitled to an evidentiary hearing. Where the facts are in dispute or a coram nobis or habeas petitioner makes a prima facie showing that he is entitled to relief, the trial court must hold an evidentiary hearing "if the [] applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding."[21] *Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010)(citing *Townsend*, 372 U.S. at 312; see also *Bibby v. Tard*, 741 F.2d 26, 30 (3d Cir. 1984)). Conversely, "[i]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a [trial] court is not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 474(in habeas context); *Fontaine*, 411 U.S. at 215 (same); *Blanton*, 94 F.3d 227, 235 (same in coram nobis context). Where challenges to guilty pleas are concerned, the critical question is whether the petitioner's allegations when viewed

---

conviction. See *Padilla*, 130 S.Ct. at 1481; see also *Smith v. State*, 2010 Ga. LEXIS 485, at *6-7 (Ga. June 28, 2010)(internal citations omitted)(collateral consequences are those that do not lengthen or alter the sentence pronounced by the trial court).

[21] The hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003).

against the record of the plea hearing are so palpably incredible or so patently frivolous as to warrant summary dismissal without a hearing. *See Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994).

Here, it is undisputed that the Superior Court did not grant Elmour an evidentiary hearing prior to summarily dismissing his collateral Sixth Amendment challenge to his plea. Moreover, the trial court did not evaluate the record of Elmour's plea hearing. (J.A. 46-49.) In the absence of any findings of fact, and in light of Padilla holding, a factual inquiry is important to determining the viability of Elmour's *Strickland* claim. *See, e.g., United States v. Chaidez*, 2010 U.S. Dist. LEXIS 69561 (N.D. Ill. July 8, 2010) (Post-*Padilla* coram nobis case where trial court required the petitioner to supplement the factual record concerning her attorney's pre-plea advise concerning deportation's consequences).

We underscore that "surmounting *Strickland*'s high bar is never an easy task".[22] *Padilla*, 130 U.S. at 1485. Likewise, the

---

[22] To obtain relief in this type of claim, in addition to *Strickland*'s stark standard, Elmour must "convince the trial court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla* at 1485 (*citing Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)); *see also Miles v. Martel*, 2010 U.S. Dist. LEXIS 36726, 1-4 (E.D. Cal. Apr. 13, 2010)(denying petitioner's habeas post-*Padilla* motion for reconsideration where petitioner who changed his plea, failed to

heavy burden of coram nobis is no less daunting. *Morgan*, 346 U.S. at 511. Nonetheless, we are of the opinion that Elmour is entitled to an evidentiary hearing in order to test the factual basis of his collateral ineffective assistance of counsel claim against *Padilla's* holding.[23] *See Santos-Sanchez v. United States*, 2010 U.S. App. LEXIS 12205 (5th Cir. Tex. June 15, 2010)(holding that *Padilla* abrogated the appellate court's previous decision and remanding for further evidentiary proceedings); *State v. Calero*, 2010 N.J. Super. Unpub. LEXIS 1365, 16-17 (App.Div. June 22, 2010)(appellate remand for evidentiary hearing in light of *Padilla*).[24] Accordingly, we remand for further evidentiary

---

adequately show that rejecting the plea bargain would have been rational under the circumstances).

[23] It is well settled that where the record is inadequate, "Sixth Amendment ineffective assistance of counsel [appeals] under *Strickland* . . . are generally not entertained..." *United States v. McLaughlin*, 386 F.3d 547, 555 (3d Cir. 2004). This practice stems from the reality that ineffective assistance of counsel claims frequently involve questions regarding conduct and strategy "that occurred outside the purview of the [trial] court and therefore can be resolved only after a factual development at an evidentiary hearing." *Id.*; *United States v. Swineheart*, 617 F.2d 336 (3d Cir. 1980).

[24] *See also People v Bennett*, 2010 NY Slip Op 20194, 4 (N.Y. City Crim. Ct. May 26, 2010)(citing *Teague v. Lane*, 489 U.S. 288, 311 (1989)(ordering an evidentiary hearing in light of *Padilla* and reasoning that, since *Padilla* extended *Strickland's* application, as opposed to creating a new constitutional rule, it is applied retroactively).

proceedings, but reach no decision as to the merits of Elmour's claim.

## V. CONCLUSION

For the reasons cited above, the trial court's denial of the Appellant's petition for writ of coram nobis is reversed. We remand for an evidentiary inquiry into the Appellant's coram nobis ineffective assistance of counsel claim. An order consistent with this opinion shall follow.